## Wright, et al. v. Cline, Administrator, et al.

(Decided November 29, 1916.)

### Appeal from Pike Circuit Court.

1. Logs and Logging—Sales and Conveyances of Standing Timber.— A sale of standing trees, with a time fixed, in the contract, in

which the vendee may remove the trees, is a sale, only of so many of the trees, as are removed from the land, within the specified time.

2. Logs and Logging—Sales and Conveyances of Standing Timber.— When the vendee of standing trees, with a time specified in the contract within which, he may cut and remove them, merely fails to cut and remove them from the land, within the time specified, he has no remedy; but, if he is prevented by the act of God or of the seller from removing the trees within the time specified, he will be entitled to a reasonable time after the time, fixed, has expired, to cut and remove them.

ROSCOE VANOVER for appellants.

W. K. CLINE and J. S. CLINE for appellees.

OPINION OF THE COURT BY JUDGE HURT—Affirming.

George W. Wright, on the 13th day of November, 1905, sold to Joel Ratcliff and Katie Ratcliff six hundred and nine trees, of several varieties, and which were standing upon his lands, in Pike county. Wright and his wife, Harriett Wright, who joined with him, executed and delivered to the Ratcliffs a deed, in which was set out the various trees, and the terms and conditions of the sale, among which was the stipulation, that the vendees should have four years thereafter to cut and remove the trees from the land. The trees were, also, designated by cross marks, and the deed was put to record. Thereafter, on the 11th day of May, 1906, Joel Ratcliff and Katie Ratcliff sold the trees and all their rights under the deed from Geo. W. Wright to them to Richard Ratcliff, and executed and delivered a deed to him, in which the sale and its terms were set out. The consideration for the sale and conveyance was $761.25, paid to Joel and Katie Ratcliff by Richard Ratcliff. Thereafter, and before the time in which the right to cut and remove the trees, under the terms of the deed from Wright to Joel Ratcliff had expired, Wright and Richard Ratcliff entered into a contract, which was reduced to writing and subscribed by Wright, by the terms of which, in consideration of the sum of twenty dollars, paid to him, Wright agreed that Ratcliff should have until the 13th day of November, 1910, in which to cut and remove the trees from the land. In the summer of 1910, Richard Ratcliff entered into a contract with one Salyer, by which he engaged Salyer to cut and remove the trees from the

land for him before the arrival of the 13th day of November, when the time expired within which, he was authorized, by his contract to cut the trees. Richard Ratcliff claims, that on several occasions previous to the summer of 1910, that appellant, Wright had approached him, and assured him that he did not need to have any uneasiness in regard to getting the trees, because he would give him just as much time in which to cut and remove the trees as he might desire; that there was a considerable number of small trees upon the tract, the title to which did not pass in the sale of the trees, which were owned by Ratcliff, and yet remained the property of Wright, and that Wright was endeavoring to make a sale of the small trees to the same person to whom Ratcliff might sell his trees, and that Wright represented that such an arrangement would assist the price, which each of them would receive for his trees; that Ratcliff had contracted the sale of his trees to one Thomas, and that negotiations were on between Wright and Thomas for the sale to the latter of the small trees, also, but for some reason not disclosed by the evidence, the expected contract with Thomas was not consummated, and he did not close a trade for either Ratcliff's or Wright's trees; that when Wright learned, thereafter, that Ratcliff had contracted with Salyer to cut and remove his trees from Wright's land, in the summer of 1910, and while there was yet time under the contract to do so, that Wright proposed to him that, if he would not cut and remove his trees, at that time, but would allow them to remain standing, until he could make a sale of his small trees to the same person, who might become a purchaser of Ratcliff's trees, he, Ratcliff, could have such time as he might want to cut and remove his trees; that he accepted this proposition and relying upon this contract, he procured a rescission of the contract between him and Salyer for the cutting and removal of the trees, and permitted the trees to remain standing upon the land. This contract was not reduced to writing, but Ratcliff, at the time, proposed to have it reduced to writing, but Wright raised his hand, and declared that his "word was as good as his bond." Ratcliff claims, that relying upon the parol contract with Wright, he was thereby caused to fail to cut and remove the trees until after the 13th day of November, when the time expired under the written contract; that on the 11th day of November, he re-

ceived information that Wright was threatening to cut the trees himself, as soon as the 13th of November should pass, and that on the 16th of November he went to see Wright and to inquire, whether he intended to cut the trees; that he met Wright upon the road and inquired of him, if he had cut the trees, when Wright asked, what trees he referred to, and when he said the trees, that I own, which are upon your land, that Wright said, that Ratcliff did not have any trees there, and that he defied him or any other person to cut the trees, and spurred by him, and that he could get no further conversation with him. Thereafter, Wright conveyed the land upon which the trees stand to his wife, the appellant, Harriett Wright, without any consideration to support the deed. Ratcliff tried to sell the trees to different persons, and tried to employ others to cut and remove them from the land, but by Wright's claim of ownership of the trees, and by forbidding any person to enter upon his lands to cut them, he deterred all from so doing.

Ratcliff instituted this action against Wright and his wife, and sought to have it adjudged, that he was the owner of the trees and had the right to cut and remove them from the land and that appellees be enjoined from setting up claim to them or interfering with his use of them.

The appellees denied Ratcliff's ownership or right to cut or remove the trees, and denied the making of the oral contract, with Ratcliff, in the summer of 1910, or that they had in any way prevented his removal of the trees during the time provided in the written contract, and that he having failed to remove the trees within the time in which he had a right under his contracts so to do, the trees, thus, became the property of appellant.

The court below found from the evidence that the parol contract was entered into between the parties, and that it was made by appellant, Geo. W. Wright, without any intention of keeping it upon his part, but with the purpose of perpetrating a fraud upon Ratcliff, by thereby preventing him from cutting and removing the trees before November 13th, and with the purpose of setting up claim to the trees after that time should have passed; that Ratcliff was deceived and thus prevented from removing the trees until after November 13th. The court further adjudged that the representatives of Ratcliff, in whose names the action had been revived, he having

died during the pendency of the suit, were the owners of the trees and entitled to cut and remove them from the land within a reasonable time, and enjoined appel-. lees from claiming the trees or from cutting them and from interfering with the appellees in removing them from the land.

The appellant, Wright, and his wife seek a reversal of the judgment and insist that the parol contract claimed by the appellees to have been made, between intestate and appellants was never in fact made, and that if it was made, it was within the statute of frauds and not enforcible.

It is well settled, that a sale of standing trees, to be removed from the land within a fixed time, in the contract, is a sale of only so many of the trees, as are removed within that time, and the vendee, who fails to remove the trees purchased by him within the time specified in the contract has no remedy, unless he has been prevented by the act of God or the act of the seller from removing the trees within the specified time. If he is so prevented, the vendee is entitled to have a reasonable time after the expiration of the time fixed in the contract within which to remove the trees. Ford Lumber Co. v. Cress, 132 Ky. 317; Jackson v. Hardin, 27 R. 1110; Chestnut v. Green, 120 Ky. 385; Taylor-Brown Timber Co. v. Wolfe Creek Coal Co., 32 R. 1015; C. O. & O. B. Co. v. Yeargin, 115 S. W. 794; Bach v. Little, 140 Ky. 396. Hence, if the parol contract was not entered into between appellant, Geo. W. Wright, and Ratcliff, by which the time in which the trees should be cut and removed was extended beyond the 13th day of November, and by the making of which Ratcliff was fraudulently induced to fail to cut and remove the trees until after the 13th day of November, it is very clear that appellees must fail in their action. As before stated, the chancellor, who tried the action in the court, below, was of the opinion that the contract was made as claimed by appellees, and that appellant made the contract with the fraudulent purpose of preventing Ratcliff from removing the trees, and that by it Ratcliff was fraudulently procured and induced to allow the trees to remain on the land, until the time given in the written contract for their removal had expired. While the evidence is conflicting, it tends very strongly to support the judgment arrived at by the chancellor. He was acquainted with the par-

ties and the witnesses, and giving to his opinion that degree of weight, which is ordinarily accorded the trial judge upon a question of fact, where the evidence is contradictory, there does not seem to be any sufficient reason to disturb it. Whether the contract is one within the statute of frauds or not, which is not decided, suffice it to say, that the statute of frauds cannot be used as a weapon of offense, and if the appellee, with a fraudulent purpose to deceive Ratcliff and thereby defraud him, and thereby prevented him from removing the trees within the time specified in his written contract, the appellant should not be allowed now to take advantage of his own wrongs and to reap the benefits of a deception purposely perpetrated by him. From the evidence, there is no doubt that the requests, representations and agreements, which appellant made with Ratcliff, all of which were represented to be for appellant's benefit, caused Ratcliff to allow the time specified in his contract to pass, without cutting and removing the trees. The property is still standing upon the lands of appellants, and no third person can in any way be injured by doing equity between the parties.

When the case is returned to the court below, it should amend its judgment, by fixing a time within which it is reasonable for the appellees to cut and remove the trees.

The judgment is therefore affirmed.